UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTONIO RUGGIA,

                       Plaintiff,

                                                       9:05-CV-0217
v.                                                (LEK/GHL)

KELLY S. KOZAK, Sex Offender Counselor at Auburn
Correctional Facility; RICHARD COX, Sergeant at Auburn
Correctional Facility; BRIAN O'DONNELL, Sex Offender
Program Supervisor at Auburn Correctional Facility;
J. McANANY, Deputy Superintendent of Administration at
Auburn Correctional Facility, R. NELSON, Deputy
Superintendent of Programs at Auburn Correctional Facility;
J. BURGE, Superintendent of Auburn Correctional Facility;
JOHN H. NUTTALL, Deputy Commission of Programs,
New York State Department of Correctional Services;
EDWARD J. McSWEENEY, Assistant Commissioner of
New York State Department of Correctional Services;
JOHN DOE, Director of Office of Guidance and Counseling,
New York State Department of Correctional Services;
GLENN S. GOORD, Commissioner of New York State
Department of Correctional Services,

                       Defendants.
_____

APPEARANCES:                                OF COUNSEL:

ANTONIO RUGGIA, 89-A-1115
   Plaintiff, *Pro Se*
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821

HON. ANDREW M. CUOMO                  MARIA MORAN, ESQ.
Attorney General of the State of New York      Assistant Attorney General
   Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

GEORGE H. LOWE, United States Magistrate Judge

# REPORT-RECOMMENDATION

This action has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court.  Antonio Ruggia ("Plaintiff"), currently an inmate at Auburn Correctional Facility, commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Generally, Plaintiff alleges that ten employees of the New York State Department of Correctional Services ("DOCS") violated his rights under the Fourth, Eighth, and Fourteenth Amendments (as well as New York State law) when, between September 16, 2004, and February 8, 2005, they improperly disclosed, or permitted the disclosure of, information about Plaintiff's "private childhood trauma," which was described in two documents contained in his Sex Offender Counseling Program files at Auburn Correctional Facility.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Currently pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 82.)  For the reasons that follow, I recommend that Defendants' motion be granted.

## I.      APPLICABLE LEGAL STANDARDS

### A.      Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining

whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[2]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[3]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[4]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

What this somewhat complex burden-shifting standard means is that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he fact that there has

---

[1]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[2]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[3]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[4]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[5]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

3

been no response to a summary judgment motion does not . . . [by itself] mean that the motion is to be granted automatically."[6]  Rather, practically speaking, the Court must (1) determine what material facts, if any, are undisputed in the record, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the defendants.[7]  However, where a plaintiff has failed to respond to a defendant's statements of material fact contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Statement will be accepted as true[8] to the extent that (1) those facts are supported by the evidence in the record,[9] and (2) the non-moving party, if he is proceeding *pro se*, has been specifically

---

[6]        *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

[7]        *See Champion*, 76 F.3d at 486 ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims").  This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."*  N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

[8]        *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[9]        *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . .  [I]n determining whether the moving party has met this burden of showing the absence of a genuine

4

advised of the potential consequences of failing to respond to the movant's motion for summary

judgment.[10]  (Here, I note that Plaintiff was so advised by Defendants.)[11]

Implied in the above-stated standard is the fact that, where a non-movant fails to respond

to a motion for summary judgment, a district court has no duty to perform an independent review

of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[12]  In

---

issue for trial, the district court may not rely solely on the statement of undisputed facts contained
in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in
the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v.
Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff]
did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).
Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1
statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*,
00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.)
("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of
undisputed material facts submitted by the movant.  To the extent such facts are not controverted,
*the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed.
R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted
under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . .");
Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary
judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant,"
and requiring that, as a threshold matter, the motion for summary judgment must be "made *and
supported* as provided in this rule") [emphasis added].

[10]     *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2
(imposing on movant duty to provide such notice to *pro se* opponent).

[11]     (Dkt. No. 82, Part 1.)

[12]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We
agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a
district court to perform an independent review of the record to find proof of a factual dispute.")
[citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir.
Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10,
2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006
U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for
summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003)
(Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d
369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[13]  (Here, I note that Plaintiff's Complaint contains a verification pursuant to 28 U.S.C. § 1746.)[14]  In any event, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must, among other things, not be conclusory.[15]  An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general.[16]  Finally, even where an affidavit (or verified complaint) is nonconclusory, it may be insufficient to create a factual issue where it is (1)

---

[13]     *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[14]     (Dkt. No. 1.)

[15]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[16]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

"largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[17]

### B.   Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

To the extent that a defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is based entirely on the plaintiff's complaint,[18] such a motion is functionally the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon

---

[17]        *See*, *e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

[18]        (*See*, *e.g.*, Dkt. No. 82, Part 4, at 15 [Defs.' Mem. of Law, arguing, *inter alia*, that Plaintiff's supervisory claim against Defendant O'Donnell "does not state a cause of action"].)

7

motion for summary judgment." *Schwartz v. Compagnise General Transatlantique*, 405 F.2d

270, 273-74 (2d Cir. 1968) [citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38

(S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment

motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to

the parties.").

 Moreover, even where a defendant has not advanced such a failure-to-state-a-claim

argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a

*pro se* prisoner has failed to state a claim upon which relief may be granted.[19]

 For these reasons, it is appropriate to briefly summarize the recently revised legal

standard governing Rule 12(b)(6) motions to dismiss.  Under Rule 12(b)(6) of the Federal Rules

of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a

defendant may base such a motion on either or both of two grounds: (1) a challenge to the

"sufficiency of the pleading" under Rule 8(a)(2);[20] or (2) a challenge to the legal cognizability of

---

[19] The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

[20] *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v.*

the claim.[21]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Such a statement must

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

*Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[21]    *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

rests."[22]  The purpose of this rule is to "facilitate a proper decision on the merits."[23]  A complaint

that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to

shape a comprehensive defense and provides no meaningful basis for the Court to assess the

sufficiency of [plaintiff's] claims."[24]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2)

as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

requirements that exceed this liberal requirement.[25]  However, it is well established that even this

liberal notice pleading standard "has its limits."[26]  As a result, several Supreme Court and Second

Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading

---

[22]    *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[23]    *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[24]    *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[25]    *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[26]    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

standard.[27]

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in

reversing an appellate decision holding that a complaint had stated a claim upon which relief

could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." 127 S. Ct. 1955, 1968-69 (2007).[28]  Rather than turning on the

conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the

"plausibility" of an actionable claim.  *Id.* at 1965-74.  More specifically, the Court held that, for a

plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to

---

[27]        *See*, *e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading
did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35,
*Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357
F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004).
Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal
of a complaint after *Swierkiewicz*.  *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of
N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz*
decision from Northern District of New York interpreting Rule 8[a][2]).  Although these
decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for
the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after
*Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See
Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because
"they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d
Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533
U.S. 289 [2001]).

[28]        The Court in *Twombly* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival."  *Twombly*, 127 S. Ct. at 1969.

relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[29] Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[30] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality. Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[31] In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might

---

[29]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[30]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[31]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

be stated."[32]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[33]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[34]

## II.    UNDISPUTED FACTS

The following facts were asserted by Defendants in their Rule 7.1 Statement, supported by accurate record citations, and either admitted or not specifically controverted by Plaintiff in his Rule 7.1 Response.  For the sake of brevity, I have omitted the record citations supporting the assertions except in those cases where I find they are necessary.  In those cases, I have included

---

[32]    *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[33]    *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[34]    *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

record citations merely at the end of the relevant paragraph, in the interest of brevity.

1.      Plaintiff is a New York State inmate with Department Identification Number 89-A-1115.

2.      The crimes for which Plaintiff is currently incarcerated include sodomy in the first degree, burglary in the first degree, and escape in the second degree.  He is currently serving an indeterminate sentence of fourteen-and-one-half (14 ½) to twenty-nine (29) years.  Plaintiff was previously convicted of the offenses of rape in the first degree, burglary in the first degree, and robbery in the first degree, and was incarcerated in state prison from March of 1982 through July of 1987 for those crimes.

3.      On or about April 5, 2004, Plaintiff was enrolled in the Sex Offender Counseling Program ("S.O.P.") at Auburn Correctional Facility ("Auburn C.F.").  The six-month program was administered by Defendant Kelly Kozak, a Corrections Counselor.

4.      On April 5, 2004, Plaintiff and Defendant Kozak reviewed and signed some forms required by the S.O.P., including a "Sex Offender Counseling Program Referral/Consent" Form, a "Waiver of Partial Confidentiality," a "Waiver of Access to Pornography, Photographs, and Other Materials," and a copy of the "Sex Offender Program Group Rules."

5.      On April 26, 2004, Plaintiff began participating in the S.O.P.

6.      On or about May 24, 2004, Defendant Kozak received an anonymous letter in the mail that threatened her life.[35]  (I note that Plaintiff disputes whether the threat letter offered by

---

[35]      (*Compare* Dkt. No. 82, Part 3, ¶ 6 [Defs.' Rule 7.1 Statement, containing referenced factual assertion, and accurate record citations in support of that assertion, including Paragraph 6 of Def. Kozak's affidavit] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 6 [denying other factual assertions contained in this paragraph of Defs.' Rule 7.1 Statement, but not specifically denying this particular factual assertion, and indeed appearing to expressly admit this

Defendants was the threat letter received by Defendant Kozak on or about May 24, 2004, arguing that Defendant Cox altered that threat letter.  However, Plaintiff does not offer any admissible record evidence establishing that Defendant Kozak did not receive any threat letter at all on or about May 24, 2004.)[36]

7.     In May of 2004, Sergeant Kirkpatrick was in charge of the school building at Auburn C.F.  In the summer of 2004, that job was taken over by Defendant Richard Cox, a Sergeant at Auburn C.F.[37]

8.     In July of 2004, Defendant Kozak verbally warned Plaintiff about making angry outbursts in class.[38]

---

factual assertion by acknowledging the existence of "the . . . threat letter [Defendant Kozak] received on May 24, 2004"].)  I note that, in numerous of his written discovery demands, Plaintiff repeatedly acknowledges that Defendant Kozak "received [a] threat letter on May 24, 2004."  (*See*, *e.g.*, Dkt. No. 89, Ex. FF, ¶¶ 7, 8 [Plf.'s Request for Admissions submitted to Def. Burge].)

[36]     *See*, *supra*, note 35 of this Report-Recommendation; *see also*, *infra*, note 49 of this Report-Recommendation.

[37]     (*Compare* Dkt. No. 82, Part 3, ¶ 7 [Defs.' Rule 7.1 Statement, containing referenced factual assertion, and accurate record citation in support of that assertion] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 7 [denying other factual assertions contained in this paragraph of Defs.' Rule 7.1 Statement, but not specifically controverting this factual assertion].)

[38]     (*Compare* Dkt. No. 82, Part 3, ¶ 8 [Defs.' Rule 7.1 Statement, containing referenced factual assertions, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 8 [denying other factual assertion contained in this paragraph of Defs.' Rule 7.1 Statement, but expressly admitting the rest of the paragraph].)  I note that, in support of his partial denial of various factual assertions in this paragraph, Plaintiff cites page 4 of Exhibit D to his opposition papers.  However, that document partially supports Defendants' factual assertion.  (Dkt. No. 89, Ex. D at 4 [containing S.O.P. Monthly Evaluation Form dated 8/6/04 and authored by Def. Kozak, stating "[A]s you are aware, I encourage you to address anger issues in ART Group.  Read a book on anger."].)  I note also that Defendants' factual assertion is partly supported by another document offered by Plaintiff, namely, Exhibit L to his opposition papers, which contains a letter from Plaintiff to Defendant Kozak dated

9.     On July 29, 2004, Plaintiff had a verbal conflict with another inmate in the S.O.P. class about the S.O.P. curriculum.  When Defendant Kozak confronted Plaintiff about his behavior, Plaintiff raised his voice to her and then withdrew completely from the group. Therefore, on August 2, 2004, Defendant Kozak issued Plaintiff an Inmate Counseling Notification for his behavior.[39]

10.     On August 16, 2004, Defendant Kozak received a letter from Plaintiff.  The letter was "about what occurred on . . . August 12, 2004" in S.O.P. class.  In the letter, Plaintiff told Defendant Kozak, *inter alia*, that she "should've read the letter" that he (unsuccessfully) attempted to give her after class on August 12, 2004.  He also said that he had come to the school building to speak with her on August 13, 2004, outside of S.O.P. class.[40]

11.     On September 16, 2004, Plaintiff approached Defendant Kozak in class and showed her a note that was taped in his class packet.  The note stated that he wanted to give her a letter in which he would confess his feelings for her.  When Defendant Kozak told Plaintiff that was inappropriate, he ripped up the note and threw it out the classroom window.  Defendant

---

September 10, 2004, in which he thanks her for lending him a book on anger in order to "help me with my hidden anger issues."  (Dkt. No. 89, Ex. L.)

[39]     (*Compare* Dkt. No. 82, Part 3, ¶ 9 [Defs.' Rule 7.1 Statement, containing referenced factual assertions, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 9 [admitting the vast majority of the factual assertions in this paragraph of Defs.' Rule 7.1 Statement, disputing only certain factual assertions (which are not included above), and adding certain factual assertions (which are included above)].)

[40]     (*Compare* Dkt. No. 82, Part 3, ¶ 10 [Defs.' Rule 7.1 Statement, containing various of the referenced factual assertions, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 10 [either admitting, or at least not specifically controverting, the factual assertions stated above]; *see also* Dkt. No. 82, Part 8, at 17 [Ex. 4 to Kozak Affid., containing letter in question].)

Kozak asked Plaintiff to return to his cell.[41]

12.     For his actions on September 16, 2004, Defendant Kozak wrote Plaintiff an Inmate Misbehavior Report, charging him with violating Facility Rules 107.11 (regarding harassment) and 180.11 (regarding facility correspondence).

13.     For his actions on September 16, 2004, Defendant Kozak also issued Plaintiff an Inmate Counseling Notification.[42]

14.     Immediately after the incident with Defendant Kozak on September 16, 2004, Defendant Cox directed Correction Officer ("C.O.") R. Henry to escort Plaintiff away, and Plaintiff was eventually placed in SHU.[43]

15.     On September 16, 2004, C.O. Henry wrote Plaintiff an Inmate Misbehavior Report, charging him with violating Facility Rules 106.10 (regarding refusals to obey direct orders), 107.10 (regarding interference with employees) and 109.12 (regarding movement inside the facility) for his actions on September 16, 2004.

---

[41]     (*Compare* Dkt. No. 82, Part 3, ¶ 11 [Defs.' Rule 7.1 Statement, containing referenced factual assertions, and accurate record citation in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 11 [admitting all of the factual assertions in this paragraph of Defs.' Rule 7.1 Statement, except the assertion that Defendant Kozak "ordered" rather than "asked" Plaintiff to return to his cell, which assertion was changed above].)

[42]     (*Compare* Dkt. No. 82, Part 3, ¶ 13 [Defs.' Rule 7.1 Statement, containing referenced factual assertion, and accurate record citation in support of that assertion] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 13 [denying that the Counseling Notification issued by Defendant Kozak was the one contained in Defendants' motion papers, but not specifically denying that a Counseling Notification was issued, and indeed appearing to expressly admit this factual assertion by acknowledging the existence of a "Counseling Notification" in his "guidance unit file"].)

[43]     (*Compare* Dkt. No. 82, Part 3, ¶ 14 [Defs.' Rule 7.1 Statement, containing referenced factual assertion, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 14 [admitting the referenced factual assertion].)

16.     On September 16, 2004, Defendant Kozak reviewed Plaintiff's S.O.P. class work, and compared the handwriting on one of Plaintiff's S.O.P. class homework assignments (specifically, his "Childhood History" assignment of June 10, 2004) to the handwriting on the threatening letter that she had received on May 24, 2004.[44]

17.     On September 16, 2004, Defendant Cox took two writing samples from Plaintiff's S.O.P. file, specifically, the homework assignment of June 10, 2004, and a letter Plaintiff had written to Defendant Kozak, dated August 26, 2004.[45]

18.     On September 16, 2004, Defendant Cox wrote an Inmate Misbehavior Report alleged that Plaintiff was the author of the threatening letter of May 24, 2004.  Specifically, the Inmate Misbehavior Report charged Plaintiff with violating Facility Rules 102.10 (regarding threats), 107.11 (regarding harassment) and 180.11 (regarding facility correspondence).[46]

_____

[44]     (*Compare* Dkt. No. 82, Part 3, ¶ 16 [Defs.' Rule 7.1 Statement, containing referenced factual assertions, and accurate record citation in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 16 [attempting to controvert–in an insufficiently argumentative fashion–several factual assertions contained in this paragraph of Defs.' Rule 7.1 Statement, but not specifically controverting this precise factual assertion, regarding which he would have no personal knowledge in any event].)

[45]     (*Compare* Dkt. No. 82, Part 3, ¶ 17 [Defs.' Rule 7.1 Statement, containing referenced factual assertion, and accurate record citations in support of that assertion] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 17 [attempting to controvert merely that Defendant Cox took the two referenced writing samples "in furtherance of the May 24, 2004-threat letter investigation," but not specifically controverting this precise factual assertion, and indeed appearing to expressly admit this factual assertion when he states that Defendant Cox took the two writing samples "not due to the furtherance of an investigation but only an alleged assumption that he had made"] [emphasis in original].)

[46]     (*Compare* Dkt. No. 82, Part 3, ¶ 19 [Defs.' Rule 7.1 Statement, containing referenced factual assertions, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 19 [not specifically controverting the referenced factual assertions].)

19.     On September 16, 2004, Defendant Cox took custody of copies of the three documents, placed them in plastic baggies, and then secured them in an evidence locker at Auburn C.F.[47]

20.     On September 22, 2004, Plaintiff's Tier III Superintendent's Hearing for the three misbehavior reports commenced, presided over by Defendant J. McAnany, a Deputy Superintendent of Administration at Auburn C.F.  Plaintiff pleaded guilty to the offense of harassment charged by Defendant Kozak, and not guilty to the remaining charges.

21.     On October 4, 2004, Defendant McAnany rendered his determination regarding Plaintiff's three misbehavior reports of September 16, 2004.  In addition to accepting Plaintiff's guilty plea with regard to the harassment charge by Defendant Kozak, Defendant McAnany found Plaintiff guilty of the offense of refusing a direct order charged by Officer Henry, as well as the offenses of making threats and violating a facility correspondence rule charged by Defendant Cox.  Defendant McAnany found Plaintiff not guilty of the remaining charges. Defendant McAnany sentenced Plaintiff to 24 months in the Special Housing Unit, which was suspended for 12 months.  In addition, Defendant McAnany sentenced Plaintiff to a loss of phone privileges for 12 months and a loss of commissary, packages, permits, recreation and recommended loss of good time for 24 months.

22.     Subsequently, Plaintiff appealed the hearing determination of October 4, 2004. On November 30, 2004, Donald Selsky, DOCS Director of Special Housing/Inmate Disciplinary

---

[47]     (*Compare* Dkt. No. 82, Part 3, ¶ 20 [Defs.' Rule 7.1 Statement, containing referenced factual assertion, and accurate record citations in support of that assertion] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 20 [not specifically controverting the referenced factual assertions].)

19

Program, issued a decision modifying the hearing determination.  Specifically, Director Selsky

reduced the penalties for the remaining offenses to four months.  In addition, he dismissed the

two charges made against Plaintiff by Defendant Cox regarding the threatening letter of May 24,

2004, namely, violating Facility Rules 102.10 (regarding threats) and 180.11 (regarding facility

correspondence).  The stated reason for the modification was that "[the] letter that was allegedly

written by [the] inmate was not given to [the] employee."[48]  (I note that Plaintiff construes this

last statement as meaning that Defendant Kozak never received a threatening letter on or about

May 24, 2004.  However, I find that such an interpretation flatly contradicts the record in this

action, which is clear that she did receive some sort of threatening letter on that date.  *See*, *supra*,

Fact No. 6.  Rather, the referenced statement appears to mean merely that the May 24, 2004,

threat letter offered by Defendants was not given to Defendant Kozak *for authentication during

Plaintiff's disciplinary hearing*.)[49]

      23.     After September 16, 2004, Plaintiff did not return to S.O.P. class.  On or about

October 6, 2004, he was given an unsatisfactory discharge from the Sex Offender Counseling

---

[48]     (*Compare* Dkt. No. 82, Part 3, ¶ 23 [Defs.' Rule 7.1 Statement, containing referenced factual assertions, and accurate record citation in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 23 [admitting the referenced factual assertions].)

[49]     (Dkt. No. 89, Plf.'s Affid., ¶ 7; Dkt. No. 89, Ex. B to Plf.'s Affid, at 80 [Hearing Transcript, in which Hearing Officer refused to let Plaintiff, at that particular time, ask Defendant Kozak whether "she [had] ever seen [the] letter" in question]; *see also* Dkt. No. 89, Ex. C, ¶ 8 [Responses to Plf.'s Requests for Admissions, in which Defendant Kozak admitted that "[d]uring [her] hearing testimony on September 29, 2004 [she] never verified that the specific threat letter that was being used as evidence against [Plaintiff] was, in fact, the identical threat letter [she] received on May 24, 2004"].)

Program.[50]

24.    On September 29, 2004, Plaintiff wrote a grievance, which was filed on October

7, 2004 with the Auburn C.F. Inmate Grievance Program and docketed as Inmate Grievance No.

AUB-43319-04.  In that grievance, he claimed that Defendants Kozak and Cox had violated his

right to privacy.  On October 12, 2004, Defendant J. Burge, Superintendent of Auburn C.F.,

issued a written decision with regard to Plaintiff's grievance.  In that written decision, Defendant

Burge stated, "Grievance of inmate A. Ruggia . . . is not upheld as [the] investigation finds no

violation of [the] inmate's confidentiality in this incident."  On October 21, 2004, Defendant R.

Nelson, the Acting Superintendent of Auburn C.F., also issued a written decision with regard to

Plaintiff's grievance.  In that written decision, Defendant Nelson stated, in pertinent part, "There

is no evidence to support this grievance."  On October 22, 2004, Plaintiff appealed the

Superintendent's determination to the Central Office Review Committee ("C.O.R.C.").  On

December 1, 2004, C.O.R.C. issued a written decision with regard to Plaintiff's appeal.  In that

written decision, C.O.R.C. upheld the Superintendent's determination with regard to Plaintiff's

grievance with clarification.  Among other things, C.O.R.C. stated:

> Contrary to the grievant's assertions, CORC has not been presented
> with sufficient evidence to substantiate any malfeasance by the
> employees referenced in this instant complaint. . . .   Contrary to the
> grievant's assertions, the grievant's confidentiality rights were not
> violated.  CORC notes that it was necessary for the documents in

---

[50]      (*Compare* Dkt. No. 82, Part 3, ¶ 25 [Defs.' Rule 7.1 Statement, containing
referenced factual assertion, and accurate record citation in support of that assertion] *with* Dkt.
No. 89, Plf.'s Rule 7.1 Response, ¶ 25 [admitting assertion]; *see also* Dkt. No. 82, Part 8, ¶ 14
[Kozak Affid.].)

question to be reviewed based upon security concerns.[51]

25. Also on September 30, 2004, Plaintiff sent what he characterizes as a "letter of complaint" to Defendant Glenn S. Goord, the then-DOCS Commissioner.  On October 20, 2004, Defendant Edward J. McSweeney, the DOCS Assistant Commissioner/ Executive Assistant, responded to Plaintiff's letter on behalf of Defendant Goord.  Among other things, the letter advised Plaintiff, "[Y]ou must submit your grievance or appeal directly to the Grievance Clerk at the facility," because DOCS Directive 4040 (regarding the Inmate Grievance Program) "makes no provision for an inmate to refer grievances directly to [the] Central Office."[52]

26. On October 13, 2004, Plaintiff wrote a second grievance, which was filed with the Auburn C.F. Inmate Grievance Program on October 18, 2004, and docketed as Grievance No. AUB-43394-04.  In that grievance, Plaintiff claimed that Defendant O'Donnell should not have investigated his prior grievance, namely, Grievance No. AUB-43319-04.  On or about October 25, 2004, the Auburn C.F. Inmate Grievance Resolution Committee referred Plaintiff's grievance to the Superintendent for investigation "[d]ue to the nature of the complaint."  On November 5, 2004, Defendant Burge issued a written decision with regard to Plaintiff's grievance.  In that written decision, Defendant Burge stated, "Grievance of inmate A. Ruggia . . . is denied as [the]

_____

[51]     (*Compare* Dkt. No. 82, Part 3, ¶ 26 [Defs.' Rule 7.1 Statement, containing most of referenced factual assertions, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 26 [admitting, or at least not specifically controverting, the referenced factual assertions]; *see also* Dkt. No. 89, Ex. R [Plf.'s Opp. Papers, attaching Def. Burge's written decision of 10/12/04].)

[52]     (*Compare* Dkt. No. 82, Part 3, ¶ 27 [Defs.' Rule 7.1 Statement, containing most of referenced factual assertions, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 27 [admitting, or at least not specifically controverting, the referenced factual assertions]; *see also* Dkt. No. 1, ¶ 50 [Plf.'s Verified Compl.]; Dkt. No. 82, Part 6, at 31 [Ex. G to Moran Affirm., attaching Def. McSweeney's response of 10/13/04].)

inmate does not determine who investigates grievances.  Grievance #4331904 addressed [the]

inmate's grievance against SOP Counselor Kozak."  On or about November 15, 2004, Plaintiff

appealed Defendant Burge's determination to C.O.R.C.  On  December 8, 2004, C.O.R.C.

unanimously denied Plaintiff's appeal.[53]

      27.    On or about October 14, 2004, Plaintiff sent a letter to Defendant Goord, alleging

that his privacy rights were violated by Defendants Kozak and Cox.  On October 15, 2004,

Plaintiff sent an addendum to that letter.  On November 9, 2004, Defendant Nuttall, the DOCS

Deputy Commissioner for Program Services, responded to Plaintiff's letters on behalf of

Defendant Goord.[54]

      28.    On or about December 28, 2004, Plaintiff filed an Article 78 petition in Albany

County Court regarding his disciplinary determination of October 4, 2004.  On April 15, 2005,

the matter was transferred to the Appellate Division, Third Department.  On December 1, 2005,

the Third Department issued a Memorandum and Judgment affirming the disciplinary

---

[53]     (*Compare* Dkt. No. 82, Part 3, ¶ 28 [Defs.' Rule 7.1 Statement, containing most of referenced factual assertions, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 28 [admitting first, second and fourth sentence of Paragraph 28 of Defs.' Rule 7.1 Statement, and denying third sentence only to the extent it was the particular copy of the decision that Plaintiff received and signed, not that the substance of that decision was not the exact same as the substance of the written decision attached at Exhibit U to his opposition papers]; *see also* Dkt. No. 82, Part 6, at 39 [Ex. H to Moran Affirm., attaching referral of Plaintiff's grievance by Auburn C.F. IGRC to Superintendent, dated 10/25/04]; Dkt. No. 89, Ex. U [Plf.'s Opp. Papers, attaching Def. Burge's written decision of 11/5/04].)

[54]     (*Compare* Dkt. No. 82, Part 3, ¶ 29 [Defs.' Rule 7.1 Statement, containing referenced factual assertions, and accurate record citation in support of that assertion] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 29 [admitting assertions].)

determination.[55]

## III.   ANALYSIS

### A.   Fourth Amendment Claim

Plaintiff alleges that Defendant Cox violated his Fourth Amendment rights by searching and seizing two documents from Plaintiff's confidential S.O.P. file, copying them, and distributing them to others without Plaintiff's permission.  (Dkt. No. 1, ¶¶ 95-96 [Plf.'s Compl.].) Similarly, Plaintiff alleges that Defendant Kozak violated his Fourth Amendment rights by disclosing private information contained in those two documents to "unauthorized" staff members and "state agencies," in breach of a "confidentiality contract" that existed between her and Plaintiff.  (*Id*. at ¶ 97.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches . . . shall not be violated."  U.S. Const. amend IV. "What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) [internal quotation marks and citation omitted].  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner*, 489 U.S. at 619 [internal quotation marks and citations omitted].  In so doing, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the

---

[55]      (*Compare* Dkt. No. 82, Part 3, ¶ 24 [Defs.' Rule 7.1 Statement, containing referenced factual assertions, and accurate record citations in support of those assertions] *with* Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 24 [admitting, or at least not specifically controverting, the referenced factual assertions].)

justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S.

520, 559 (1979) [citations omitted], *accord*, *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992).

Here, with respect to the first interest to be balanced (i.e., the intrusion of the individual's

Fourth Amendment interest of privacy), it should be remembered that, generally, "given the

realities of institutional confinement, any reasonable expectation of privacy that a detainee

retain[s] necessarily [is] of a diminished scope." *Bell v. Wolfish*, 441 U.S. 520, 556-57 (1979)

(permitting body cavity searches of prison inmates).[56]  With respect to the second interest to be

balanced (i.e., the Government's interest promoted by the practice in question), it should be

remembered that, generally, "[t]he Government's interest in regulating . . . its operation of a . . .

prison . . . presents special needs beyond [the] normal [need for] law enforcement . . . ." *Skinner*,

489 U.S. at 619 [internal quotation marks and citation omitted]; *see also Roe v. Marcotte*, 193

F.3d 72, 80-82 (2d Cir. 1999) ("While convicted prisoners do not forfeit all constitutional

protections by reason of their conviction and confinement, the rights they retain are subject to

restrictions dictated by concerns for institutional security, order, and discipline.").  This is

because, as the Supreme Court has recognized, "[a] detention facility is a unique place fraught

with serious security dangers." *Bell*, 441 U.S. at 559.

In arguing that the intrusion into his Fourth Amendment privacy interest was significant,

---

[56]       For example, the Fourth Amendment's proscription against unreasonable searches
does not apply *at all* within the confines of a prison cell.  *Hudson v. Palmer* 468 U.S. 517, 526
(1984); *see also Tinsley v. Greene*, 95-CV-1765, 1997 WL 160124, at *7 (N.D.N.Y. March 31,
1997) (Pooler, J., adopting Report-Recommendation of Homer, M.J.) ("Searches of prison cells,
even arbitrary searches, implicate no protected constitutional rights."); *Demaio v. Mann*, 877 F.
Supp. 89, 95 (N.D.N.Y.) (Kaplan, J., sitting by designation) ("Searches of prison cells, even
arbitrary searches, implicate no protected constitutional rights."), *aff'd*, 122 F.3d 1055 (2d Cir.
1995).

Plaintiff relies almost exclusively on the "Waiver of Partial Confidentiality" he signed.  (Dkt. No. 89, Plf.'s Opp. Mem. of Law, at 3-4.).  As an initial matter, I believe that Plaintiff misconstrues the "Waiver of Partial Confidentiality."  Specifically, he appears to read that document as (1) establishing that, absent a waiver, *all* information generated during his participation in the Auburn C.F. S.O.P. is confidential, and (2) creating a partial waiver of that confidentiality for *some* of that information.  (Dkt. No. 89, Plf.'s Opp. Mem. of Law, at 3-4.)  To the contrary, I find that the document (1) recognizes that only *some* of the information generated during Plaintiff's participation in the Auburn C.F. S.O.P. is confidential, and (2) waives that partial confidentiality. (Dkt. No. 82, Part 8, at 8 [Ex. 1 to Kozak Affid.].)  That is why the document is called a "Waiver of Partial Confidentiality" and not  a "Partial Waiver of Confidentiality."  (*Id*.)[57]  That is also why Paragraph 1 of the S.O.P. Group Rules, entitled "**Confidentiality**," provides that "[w]hatever is

---

[57]     I will spare the reader a detailed explanation of why the adjective "partial" modifies a different word in the first title (i.e., the word "confidentiality") than it does in the second title (i.e., the word "waiver")--primarily because I believe that the difference is so obvious.  I will simply note that, *generally*, in the English language, an adjective immediately precedes the noun it modifies (unless it follows a linking verb).  *See* Diana Hacker, *The Bedford Handbook for Writers* 320 (St. Martin's Press 3d ed. 1991) ("[I]n English adjectives usually precede the nouns they modify and . . . they may also appear following linking verbs.").  I will also note that the meaning of the term "partial confidentiality" is quite different than the meaning of the term "partial waiver."  Simply stated, the term "partial confidentiality" means that only *some* confidentiality has been bestowed upon a thing.  *See, e.g., SEC v. TheStreet.com,* 273 F.3d 222, 226 (2d Cir. 2001) (describing a deposition, only "portions" of which contained sensitive information, as a "partially confidential deposition"); *Lisa C. v. William R.*, 635 N.Y.S.2d 449, 451 (Sup. Ct., New York County, 1995) (describing N.Y. Dom. Rel. Law § 235, which provides for confidentiality of certain information under certain circumstances for a certain period of time, as containing a "grant[] [of] partial confidentiality" during divorce proceedings).  The term "partial waiver," on the other hand, means that only some of a thing has been waived.  *See, e.g.*, *In re T.W.*, 732 A.2d 254, 257 (D.C. 1999) (discussing order "partially waiving" the blanket of confidentiality that covers child neglect proceeding); *cf. In re White*, 499 S.E.2d 813, 815 (S.C. 1998) (describing an order granting the "partial lifting" of the blanket of confidentiality that covers grand jury proceedings).

said in the room[] stays in the room.  Nothing said in a counseling session is to be repeated.  If the specifics of an unreported crime or future offense are reported during group, the Counselor is morally and ethically mandated to report it."  (Dkt. No. 82, Part 8, at 10 [Ex. 1 to Kozak Affid.] [emphasis in original].)  Notably, Paragraph 1 of the Group Rules does not provide that whatever is *written* is confidential, or that what is written *out of the room* (i.e., homework assignments or letters) is confidential, or that the specifics of an unreported crime or future offense are confidential.  (*Id* [emphasis added].)

However, even if Plaintiff's reading of the "Waiver of Partial Confidentiality" were correct, his argument would fail because the claim in question is not for breach of contract.  It is for a violation of the Fourth Amendment.  As explained earlier, in assessing the significance of the intrusion on an individual's Fourth Amendment privacy interests, it is necessary to consider things like the *place*, *circumstances*, and *scope* of the search.

Here, Plaintiff completely ignores the *place* in which the search was conducted, namely, prison.  As explained earlier, the fact that the search occurred in prison generally diminishes the reasonableness of any expectation of privacy possessed by Plaintiff.  Plaintiff also ignores the *circumstances* of the disclosure.  The documents in question were not created by Plaintiff as part of a voluntary psychotherapy treatment with a psychiatrist.  They were created by Plaintiff as part of a counseling program in which he was required to participate because he had been convicted of two sex offenses.  And they were not disclosed to the public at large but to only those correctional officers necessary to investigate (and prevent) a crime.[58]  Finally, Plaintiff

---

[58]    Specifically, it appears from the record that, as a result of Defendants' actions, the information in question was disclosed to only *three* individuals at Auburn C.F. other than to Defendant Kozak (who presumably saw the information, as part of her review of Plaintiff's

downplays the limited *scope* of the search.  The focus of the search was on the nature of

Plaintiff's handwriting, not the events described in the documents containing the handwriting.[59]

Clearly, there is a difference between these two things.[60]

In sum, it is difficult for me to imagine how any convicted sex offender in such a program

_____

course work): (1) Defendant Cox; (2) the hearing officer, Defendant McAnany; and (3)
Defendant Kozak's supervisor, Brian O'Donnell.  (*See, e.g.*, Dkt. No. 82, Part 2, ¶ 9 [Affid. of
Cox, swearing, "At no time have I shown or discussed the contents of plaintiff's S.O.P. materials
with another inmate or any staff member who was not directly involved in the threat letter
investigation."]; Dkt. No. 82, Part 2, ¶ 6 & Ex. 3 [Affid. of Cox, attaching chain-of-evidence
record, showing that the copies of the documents were placed in the evidence locker on 9/16/04,
removed from the locker on 9/29/04, for Plaintiff's hearing, and "destroyed" thereafter]; Dkt. No.
89, Plf.'s Rule 7.1 Response, ¶ 20 [not denying Defendants' factual assertion that, on September
16, 2004, Defendant Cox took custody of the two documents in question and "secured them in
[an] evidence locker"]; Dkt. No. 89, Ex. B. at 18-20, 31, 82-83 [Hearing Transcript, not
indicating that, when Defendant McAnany, read portions of the documents in question into the
hearing record, anyone else was present in the room; indicating that, when Lieutenant Head
transported the documents from the evidence locker to Defendant McAnany, the documents were
sealed in a bag; and indicating that Brian O'Donnell helped Defendant Kozak review
handwriting samples in the S.O.P. files].)

[59]     (*See, e.g.*, Dkt. No. 89, Ex. B to Plf.'s Affid, at 101 [Hearing Transcript, in which
Defendant Cox testified, "I didn't really care about whatever he was writing about[.]  I was
simply matching up words and letters and the way they were written, and the context that they
were written [in] . . . the slant of his handwriting[.]  I at no time cared what he supposedly had
written.  I just wanted to know where they were similar."].)

[60]     I note that cases exist differentiating between the confidential communications
contained in a document and the type or handwriting in which those communications are written.
*See, e.g.*, *United States v. Weger*, 709 F.2d 1151, 1153-56 (7th Cir. 1983) (admitting into
evidence letter from defendant to her attorney for purpose of comparing style of type on letter
with another letter typed on defendant's typewriter, over defendant's objection that letter was
protected from disclosure by attorney-client privilege); *United States v. Pipkins*, 528 F.2d 559,
563-64 (5th Cir. 1976) ("One's style of handwriting is not an intrinsically confidential attribute. .
. . Moreover, even assuming, *arguendo*, that the samples of handwriting that [the defendant]
gave [to his expert witness] were privileged communications, there was no error in admitting the
expert's testimony [regarding those communications]. . . .  [T]he questions [asked of the
defendant's expert witness] did not call for the revelation of the substance of a confidential
communication; his testimony was confined to nonconfidential matters.").

at a maximum-security correctional facility could reasonably believe that an exemplar of his handwriting contained in a letter to the program's coordinator could be cloaked in an impenetrable blanket of confidentiality--especially when that coordinator is female, all the convicted sex offenders in the program are male, and the coordinator is believed to have received an anonymous and threatening letter from one of the sex offenders.[61]

Moreover, Plaintiff's underlying privacy interest in the two documents in question was minimal at best.  This is because personal information about Plaintiff is contained in only a *few lines* of Plaintiff's four-page homework assignment of June 10, 2007, and *not at all* in Plaintiff's two-page letter of August 26, 2004.[62]  Furthermore, the "childhood trauma" to which Plaintiff repeatedly refers in his papers, concerns only *two* incidents–one incident involving excessive

---

[61]     In arguing that the intrusion into his Fourth Amendment privacy interest was significant, Plaintiff also relies on (1) the Professional Code of Ethics of the Association for the Treatment of Sex Abusers and (2) the New York State therapist-patient privilege.  (*See, e.g.*, Dkt. No. 1, ¶¶ 99-100 [Plf.'s Compl.]; Dkt. No. 89, Plf.'s Affid., ¶ 3; Dkt. No. 89, Plf.'s Affid., Ex. A; Dkt. No. 82, Part 6, Ex. F at 2-3.)  As an initial matter, I find that neither the aforementioned Code of Ethics nor therapist-patient privilege protects the information in question from disclosure under the circumstances.  (*See, e.g.*, Dkt. No. 89, Plf.'s Affid, Ex. A, ¶ 9(a),(j) [acknowledging that there are "limits of confidentiality" and "exception[s]" to confidentiality, and instances where disclosures are "mandatory," and that client information may be communicated to others without the consent of the client where the client "presents a clear and immediate danger to another individual"].)  Furthermore, and more importantly, I find that, even if there were such a violation, that violation would not be the determinative factor in deciding whether a Fourth Amendment violation has occurred.  Rather, as discussed earlier, a balancing test is used to decide whether such a Fourth Amendment violation has occurred.  For this reason, the Tenth Circuit has expressly ruled that, even if such a therapist-privilege exists between a prisoner and a correctional counselor, a violation of that privilege would not give rise to a federal civil rights actions pursuant to 42 U.S.C. § 1983.  *See Madrid v. Mangindin*, No. 95-1418, 1996 U.S. App. LEXIS 12366, at *5-6 & n.1 (10th Cir. May 29, 1996) ("If Mr. Madrid [an inmate] has a claim [for a violation of the therapist-patient privilege], it is under Colorado law.").

[62]     (*See* Dkt. No. 82, Part 7 [Ex. 2 to Affid. of Cox, provided for *in camera* review only].)

punishment, and one incident involving an *attempted* sexual assault.[63]  This last fact is

particularly vexing, since this entire lawsuit essentially concerns the disclosure of this

information to a handful of individuals for a limited purpose.  (Having apparently become

emboldened by the administrative reversal of certain of his disciplinary convictions, Plaintiff has

aggressively, and indeed litigiously, pursued any remedies he might conceivably have as a result

of the disclosure of this information.)

        In addition, more than a decade before the disclosure at issue (specifically, on January 26,

1989), information about the attempted sexual assault had been voluntarily disclosed in open

court by Plaintiff's then-counsel in an attempt to obtain a more lenient sentence for Plaintiff after

his second rape conviction.[64]  While this fact is by no means determinative of the issue at hand, it

somewhat undermines the allegedly "private" nature of the information at issue.

        For all of these reasons, I find that, based on the current record, no reasonable fact-finder

could conclude that the limited intrusion into Plaintiff's limited privacy interest in the

information in question was anything more than minimal.  The next step, in the Court's analysis

of Plaintiff's Fourth Amendment claim, is to determine the significance of any legitimate

governmental interest promoted by the search in question, and to balance it against the minimal

intrusion into Plaintiff's privacy interest.

        Here, the impetus for the disclosure in question was the threat letter that Defendant

Kozak received on or about May 24, 2004.  However, the nature of that threat letter appears to be

in dispute.  In particular, Defendants offer, in their motion papers, two copies of the same letter,

---

[63]         (*Id*.)

[64]         (Dkt. No. 89, Plf.'s Opp. Papers, Ex. CC, at 12-13.)

and swear that the letter is the one received by Defendant Kozak on or about May 24, 2004.[65]

Plaintiff acknowledges that Defendant Kozak received *some* letter on or about May 24, 2004.[66]

But he denies that the letter offered by Defendants is *that* letter.[67]  In support of that denial,

Plaintiff cites five portions of the record.[68]  While I doubt that a rational fact-finder could

conclude from these five portions of the record that the letter offered by Defendants is not the

letter received by Defendant Kozak on or about May 24, 2004, I am unable to find that such a

conclusion is impossible.

However, the dispute regarding whether the letter offered by Defendants is the particular

threat letter received by Defendant Kozak on or about May 24, 2004, is immaterial to Plaintiff's

Fourth Amendment claim.  This is because Defendants have asserted, and adduced evidence

---

[65]     (Dkt. No. 82, Part 8, ¶ 6 & Ex. 2 [Kozak Affid.]; Dkt. No. 82, Part 7, ¶ 2 & Ex. 1 [Cox Affid.].)

[66]     (Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 6 [disputing only that the letter offered by Defendants "was, in fact, the exact threat letter she received on May 24, 2004"].)

[67]     (Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 6.)

[68]     Specifically, these five portions of the record are as follows: (1) Dkt. No. 89, Plf.'s Affid., ¶ 7; (2) Dkt. No. 89, Ex. B to Plf.'s Affid, at 80 [Hearing Transcript, in which Hearing Officer refused to let Plaintiff, at that particular time, ask Defendant Kozak whether "she [had] ever seen [the] letter" in question]; (3) Dkt. No. 89, Ex. C, ¶ 8 [Responses to Plf.'s Requests for Admissions, in which Defendant Kozak admitted that "[d]uring [her] hearing testimony on September 29, 2004 [she] never verified that the specific threat letter that was being used as evidence against [Plaintiff] was, in fact, the identical threat letter [she] received on May 24, 2004"]; (4) Dkt. No. 82, Part 7, Ex. 4 [Cox Affid., attaching Misbehavior Report showing blank signature line following subpart entitled "ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (*if any*):"] [emphasis added]; and (5) Dkt. No. 82, Part 6, at Ex. C, at 2 [DOCS Memorandum of 11/30/04, from Selsky, stating that Plaintiff's hearing determination had been modified because "letter that was allegedly written by inmate was not given to employee," referring to the letter of 5/24/04, which was not given to Defendant Kozak for authentication during the disciplinary hearing].)

establishing, that, on or about May 24, 2004, Defendant Kozak received *a* threat letter from a prisoner.  Moreover, Plaintiff either explicitly acknowledges the truth of this factual assertion, or, at the very least, he fails to adduce evidence controverting that fact.  As a result, the fact in question is deemed admitted for purposes of Defendants' summary judgment motion.  (*See*, *supra*, Fact 6 in Part II of this Report-Recommendation.)

In addition, Defendants have asserted, and adduced evidence establishing, that, on September 16, 2004, Defendant Cox took only two writing samples from Plaintiff's S.O.P. file, namely, Plaintiff's homework assignment of June 10, 2004, and Plaintiff's letter to Defendant Kozak of August 26, 2004.[69]  Moreover, while denying various other factual assertions with regard to these two writing samples (e.g., that they were taken "in furtherance of the May 24, 2004-threat letter investigation"), Plaintiff does not deny the fact that Defendant Kozak took only these two documents from Plaintiff's S.O.P. file.[70]  As a result, this fact also is deemed admitted for purposes of Defendants' summary judgment motion.

I note that Plaintiff attempts to make much ado about the fact that Defendant Cox chose to take the aforementioned writing samples from Plaintiff's S.O.P. file, as opposed to taking those samples from some other source or sources.  However, record evidence exists suggesting that the reason Defendant Cox chose to take writing samples from Plaintiff's S.O.P. file is because of two rather legitimate reasons: (1) Defendant Cox "went to where [he] believed [Plaintiff] was most comfortable in writing [so he would get a good look at Plaintiff's

---

[69]     (Dkt. No. 82, Part 8, ¶ 13 [Kozak Affid.]; Dkt. No. 82, Part 7, ¶ 4 & Ex. 2 [Cox Affid.].)

[70]     (Dkt. No. 89, Plf.'s Rule 7.1 Response, ¶ 17.)

handwriting], and [he thought Plaintiff] was most comfortable in writing . . . [in] that class";[71] and (2) Defendant Kozak suggested that Defendant Cox look at documents from Plaintiff's Program file after she had reviewed those documents herself due to Plaintiff's inappropriate behavior toward her.[72]  In any event, even if I were to find that the availability of other handwriting examplars *somewhat* undermines the government's legitimate interest promoted by the search in question, I would find that it does so only minimally.

Based on this record evidence, I find that DOCS, and Defendant Cox in particular, had a strong and legitimate interest in reviewing the handwriting on the documents in question, namely, to protect the safety of one of DOCS' employees at a maximum-security correctional facility–a female counselor who had received a threatening letter apparently sent by one of the male sex offenders to whom she was exposed through her work.

I further find that the government's strong legitimate interest in reviewing the handwriting on the documents in question far outweighed the minimal intrusion into any Fourth Amendment interests Plaintiff possessed.  *See Roe*, 193 F.3d at 77-80 (permitting collection of DNA sample from convicted sex offender).  As a result, I recommend that the Court dismiss Plaintiff's Fourth Amendment claim.

### B.  Eighth Amendment Claims

Plaintiff's asserts his Eighth Amendment claims in three paragraphs of his Complaint. (Dkt. No. 1, ¶¶ 107-108, 114 [Plf.'s Compl.].)  Specifically, Plaintiff's claims are bifurcated into

---

[71]     (Dkt. No. 89, Ex. B to Plf.'s Affid, at 104 [Hearing Transcript].)

[72]     (Dkt. No. 82, Part 8, ¶¶ 12-13 [Kozak Affid.]; Dkt. No. 82, Part 7, ¶¶ 3-4 [Cox Affid.].)

two separate theories of liability.  First, Plaintiff claims that all ten Defendants have been deliberately indifferent to (1) his serious mental health condition and/or (2) his humiliating and emotionally painful condition of confinement.  (*Id*. at ¶¶ 107-108.)  Second, Plaintiff claims that Defendant Goord and Defendant "Doe" (whom Defendants have identified as James Granger)[73] were deliberately indifferent to Plaintiff's "mental health and well-being" by "establishing a therapeutic treatment program which was run by an unlicensed, unregistered and uncertified counselor" (namely, Defendant Kozak).  (*Id*. at ¶ 114.)

Defendants recite the correct legal standard that governs Plaintiff's Eighth Amendment claims.  (Dkt. No. 82, Part 4, at 20-22 [Defs.' Mem. of Law].)  Generally, to prevail on an Eighth Amendment claim, Plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that Defendant acted with *deliberate indifference* to Plaintiff's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

With respect to Plaintiff's first Eighth Amendment claim, Defendants essentially argue that Plaintiff  has not adduced any evidence that, during the time in question, he experienced either a mental health condition or condition of confinement that was sufficiently serious for purposes of the Eighth Amendment.  (Dkt. No. 82, Part 4, at 21 [Defs.' Mem. of Law].)  In his response papers, Plaintiff takes issue with this argument, asserting a late-blossoming physical injury claim.  (*Compare* Dkt. No. 89, Plf.'s Mem. of Law, at 17-18 *with* Dkt. No. 1, ¶ 107 [Plf.'s Verified Compl., acknowledging that the actions of Defendants were "not physically barbarous"].)  Specifically, Plaintiff argues that he has adduced evidence that (1) he has been

---

[73]         (Dkt. No. 82, Part 4, at 1, n.1 [Defs.' Mem. of Law].)

diagnosed with Post-Traumatic Stress Disorder due to "an extremely traumatic event that he experienced as a child," (2) Defendants' violation of his privacy (or refusals to stop those violations) have "exacerbated" his Post-Traumatic Stress Disorder, and (3) Defendants' actions have caused Plaintiff to sustain "physical as well as mental and emotional injuries."  (*Id*. at 17-18.)

For the sake of argument, I will assume that, during the time in question, Plaintiff was suffering from Post-Traumatic Stress Disorder due to the attempted sexual assault that he experienced as a child.[74]  I will also assume that the disorder was, under the circumstances, a sufficiently serious condition for purposes of the Eighth Amendment.

The problem with Plaintiff's argument is that there is no evidence in the record that Defendants possessed the sort of mental state (i.e., deliberate indifference) required to subject them to liability under the Eighth Amendment.  Deliberate indifference is a mental state that is akin to *criminal recklessness*.[75]  Here, I can find no evidence that any Defendant knew that Plaintiff was even suffering from Post-Traumatic Stress Disorder during the time in question (if

---

[74]     (*See* Dkt. No. 89, Ex. E [Plf.'s Opp. Papers, attaching document entitled "Office of Mental Health Mental Status Report for Division of Parole," dated 5/28/02, and authored by a social worker or counselor named "JK Wood" who worked at either the New York State Office of Mental Health or Elmira C.F.].)

[75]     *See Evering v. Rielly*, 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *30 (S.D.N.Y. Sept. 28, 2001) ("'The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.'") (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 [2d Cir. 1998]).

he was indeed suffering from that disorder during the time in question).[76]  Moreover, there is no evidence that any Defendant knew that the limited disclosure of the modicum of personal information in question carried an excessive risk that Plaintiff would experience physical injury, not to mention the sort of extreme physical injury or pain necessary to invoke the Eighth Amendment.  At most, the record evidence indicates that there *might* have been a hint of negligence on the part one or two of the Defendants.  However, even if true, such evidence would not be enough to make those two Defendants, or any of the other Defendants, liable to Plaintiff under the Eighth Amendment.[77]

With respect to his second Eighth Amendment claim, Defendants argue that Plaintiff has adduced no record evidence establishing that Defendant Kozak was somehow required by the Eighth Amendment to possess any of the licenses, registrations, or certifications that he alleges she was lacking.  (Dkt. No. 82, Part 4, at 21 [Defs.' Mem. of Law].)  Indeed, they argue, Defendant Kozak possessed rather significant credentials to be a sex abuse counselor.  (*Id.*; *see*, *e.g.*, Dkt. No. 82, Part 8, ¶ 15 & Ex. 7 [Kozak Affid., summarizing her background and training as a sex offender counselor].)  In his response papers, Plaintiff takes issue with this argument, asserting that Defendant Kozak was subject to the requirements of four different entities: (1) she

---

[76]     I note that the document upon which Plaintiff relies to support his claim that he was suffering from Post-Traumatic Stress Disorder was created more than two years before the time in question by someone not working at Auburn C.F., who did not address it to anyone at Auburn C.F.  (*See* Dkt. No. 89, Ex. E [Plf.'s Opp. Papers, attaching document entitled "Office of Mental Health Mental Status Report for Division of Parole," dated 5/28/02, and authored by a social worker or counselor named "JK Wood" who worked at either the New York State Office of Mental Health or Elmira C.F.].)

[77]     *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

was required to be licensed with the New York State Department of Education pursuant to N.Y.

Education Law § 7701(2); (2) she was required to be certified and approved by a New York State

Civil Service Commission pursuant to N.Y. Civil Service Law § 22; (3) she was required to be

more educated and experienced than she was by the Code and Ethics and Standards of Practice of

the Association for the Treatment of Sexual Abusers, which, according to Plaintiff, requires "a

professionally qualified SOP counselor [to have] an advanced degree in a recognized mental

health profession in addition to more than 2000 hours of experience in evaluating and treating

sex offenders"; and (4) she was required to be certified by the Uniform Law Commissioner's

Model Sentencing and Correction Act § 4-601(b)(1).  (Dkt. No. 89, Plf.'s Mem. of Law, at 18-

20.)

   I begin my analysis by noting the dearth of case law on this issue, at least within the

Second Circuit.[78]  What little case law there is, however, appears to suggest that this claim fails

as a matter of law.  For example, in *Selah v. Goord*, the plaintiff alleged, *inter alia*, that the

DOCS Sex Offender Treatment Program "is not an appropriate alternative to treating him as a

---

   [78]  For example, in *Donhauser v. Goord*, which is a rather seminal case in this Circuit
regarding the (Fifth Amendment) constitutionality of the DOCS' Sex Offender Treatment
Program, the plaintiff initially requested, among his many forms of relief, an Order directing that
"Corrections Counselors assigned to the Sex Offender Program [must] have specialized training
in counseling sex offenders," and that "a certified psychologist [must] supervise the Sex
Offender Program."  *Donhauser v. Goord*, 01-CV-1535, Complaint, "Prayer for Relief"
(N.D.N.Y. filed Oct. 10, 2001) (Hurd, J.).  However, the plaintiff subsequently filed an amended
complaint that omitted this request.  *Donhauser v. Goord*, 01-CV-1535, Amended Complaint,
"Relief Requested" (N.D.N.Y. filed Apr. 23, 2002) (Hurd, J.).  The omission was the result of
two Conditional Orders of Dismissal issued by Judge Hurd holding that Plaintiff's claims, inter
alia, failed to state a claim upon which relief could be granted.  *Donhauser v. Goord*, 01-CV-
1535, Orders of Conditional Dismissal (N.D.N.Y. filed Nov. 1. 2001, and March 22, 2002)
(Hurd, J.)  However, neither of those Orders appears to specifically address the merits of the
plaintiff's training-and-certification request.  *Id*.

sex offender with [a] mental illness," and the prison counselors running the program were "not appropriately qualified" to care for and treat him. *Selah v. Goord*, 04-CV-3273, 2006 U.S. Dist. LEXIS 51051, at *1 (S.D.N.Y. July 24, 2006). Initially, the district judge assigned to the case (Judge Mukasey) dismissed this claim as facially deficient in a screening order. *Selah*, 2006 U.S. Dist. LEXIS 51051, at *1. When the plaintiff reasserted the claim in an amended complaint, the district judge assigned to the case (Judge Chin) dismissed the claim for failing to "allege facts constituting a deprivation of [the plaintiff's] rights under the Eighth Amendment . . . ." *Id*. at *4. This ruling is certainly consistent with the observation of the Supreme Court that "States enjoy wide latitude in developing treatment regimens [for sex offenders]." *Kansas v. Hendricks*, 521 U.S. 346, 368, n.4 (1997); *see also Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) ("[A] State necessarily has considerable discretion in determining the nature and scope of its responsibilities [to provide certain services to institutionalized individuals].").

Even setting aside these authorities and analyzing Plaintiff's claim anew, I find that the claim has no merit. As an initial matter, none of the four standards cited by Plaintiff prohibit Defendant Kozak from working as a Correction Counselor at Auburn C.F., or conducting its S.O.P., under the circumstances.

Section 7701(2) of the N.Y. Education Law defines the term "[p]ractice of clinical social work." N.Y. Education Law § 7701(2). I see nothing in that provision requiring Defendant Kozak to be licensed by the New York State Department of Education in order to work as a Correction Counselor at Auburn C.F., or conduct its S.O.P. Perhaps Plaintiff is referring to Section 7704(a) of the N.Y. Education Law, which sets forth the requirements to qualify for a license as a "licensed clinical social worker." N.Y. Education Law § 7701(2). However, again, I

see nothing in that provision requiring Defendant Kozak to be a "licensed clinical social worker" in order to work as a Correction Counselor at Auburn C.F., or to conduct its S.O.P.

Section 22 of the N.Y. Civil Service Law provides that, before any new position "in the service of a civil division" shall be created or any existing position in such service shall be reclassified, that creation or reclassification must be approved by "the municipal commission having jurisdiction" over that civil division.  N.Y. Civil Service Law § 22.  Nothing in that provision requires Defendant Kozak to be licensed by the New York State Department of Education in order to work as a Correction Counselor at Auburn C.F., or conduct its S.O.P.  As an initial matter, I have found no evidence in the record that Defendant Kozak's position at Auburn C.F. with regard to the S.O.P. was a "new position" or "reclassification" of an existing position.  Moreover, the term "in the service of a civil division" in Section 22 does not mean "in the service of the New York State Department of Correctional Services," but "in the . . . service of any subdivision of the state," such as counties, towns and villages.  N.Y. Civil Service Law § 2(8).  Similarly, the term "municipal commission" does not mean the commission of the State of New York, but the commission of a city, county, or suburban town having a population of at least fifty thousand.  N.Y. Civil Service Law § 2(8).

The Code and Ethics and Standards of Practice of the Association for the Treatment of Sexual Abusers sets forth requirements for *membership* in the Association, not requirements for treating sex offenders in prison (or elsewhere).  Moreover, it is entirely possible that Defendant Kozak, who possesses a Masters Degree, and possessed work experience prior to counseling

Plaintiff,[79] would have qualified for membership in ATSA during the time in question.  *See* ATSA Membership Requirements, http://www.atsa.com/memReq.html (last visited Nov. 28, 2007).

Finally, Section 4-601(b)(1) of the Uniform Law Commissioner's Model Sentencing and Correction Act provides, "Consistent with other provisions of law, the director [of a department of corrections] shall adopt rules to evaluate and approve programs placing confined persons at risk.  A program placing a confined person at risk may not be approved unless . . . a board of at least 2 persons appointed by the [director] and professionally competent to evaluate the program certifies in writing as to its professional validity . . . ."  Michael Mushlin, *Rights of Prisoners* Appendix B (2d ed. 1993).  Nothing in that provision prohibits Defendant Kozak from working as a Correction Counselor at Auburn C.F., or conducting its S.O.P.  For example, I can find no indication that either the New York State legislature or New York State DOCS has adopted this section of the model act (or any section of that act).  Nor is there any evidence that DOCS somehow improperly established or implemented the Sex Offender Treatment Program.  Moreover, the provision in question must be narrowly construed so as to be "[c]onsistent with other provisions of law," such as the statutes and regulations establishing the New York State Department of Correctional Services, and empowering it to create and operate the programs it deems, in its discretion, necessary and fit to rehabilitate the offenders incarcerated therein.

Finally, even if Defendant Kozak had somehow failed to meet one or more of these standards, such a failure would not constitute a per se violation of the Eighth Amendment.

---

[79]     (Dkt. No. 82, Part 8, ¶ 15 & Ex. 7 [Kozak Affid., summarizing her work experience].)

Rather, as explained earlier, generally, to prevail on an Eighth Amendment claim, a plaintiff must show two things: (1) that the conditions of his confinement resulted in a deprivation that was sufficiently serious; and (2) that the defendants acted with deliberate indifference to the plaintiff's health or safety.  At most, Plaintiff's licensing/registration/certification claim against Defendants Goord and Granger alleges negligence on their part, which is not sufficient to state a claim under the Eighth Amendment.

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claims.

### C.    Fourteenth Amendment Due Process Claims

In addition to casting his invasion-of-privacy claim as a Fourth Amendment violation, Plaintiff casts that claim as a Fourteenth Amendment violation, specifically, as a violation of his rights to both substantive and procedural due process.  (*Compare* Dkt. No. 1, ¶¶ 95-96 [Plf.'s Compl., asserting, as "Count One," a Fourth Amendment claim based on the disclosure of his private information] *with* Dkt. No. 1, ¶¶ 97-104 [Plf.'s Compl., asserting, as "Count Two," a Fourteenth Amendment claim based on the same disclosure of private information].)

The problem with Plaintiff's so-called "substantive due process claim" is that, as the Supreme Court has repeatedly held, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the [more generalized notion] of substantive due process."  *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 392-94 [1989]).[80]  Because I have already analyzed (and rejected)

---

[80]        *See also Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (offering similar recitation of law before refusing to analyze claim of improper search under Fourteenth Amendment); *accord*, *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000).

Plaintiff's invasion-of-privacy claim under the appropriate legal standard (i.e., the legal standard governing Fourth Amendment claims), I need not do so here under the standard for Fourteenth Amendment substantive due process claims.

Even if I were to analyze Plaintiff's invasion-of-privacy claim under the rubric of substantive due process, I would recommend dismissal of that "substantive due process claim" for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 82, Part 4, at 11-12 [Defs.' Mem. of Law].)  I would add only that, in addition to failing to fulfill the first requirement in a substantive due process analysis (i.e., identifying the precise constitutional right at stake), Plaintiff fails to fulfill the second requirement in such an analysis (i.e., showing that the state action was arbitrary in the constitutional sense).  Specifically, I find that, far from being arbitrary, the actions taken by Defendants Kozak and Cox with regard to the two documents at issue were entirely legitimate, for the reasons stated above in Part III.A. of this Report-Recommendation.

Similarly, I reject Plaintiff's procedural due process claim, largely for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 82, Part 4, at 12-13 [Defs.' Mem. of Law].)  Even if Plaintiff has demonstrated that he possessed some limited liberty interest in avoiding the disclosure of the personal matters contained in the two documents at issue, he has not demonstrated that he was deprived of that (limited) interest without being afforded all the process that he was due.[81]

---

[81]    "[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ."  *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

What procedural protections an individual is entitled to in a particular case "is not a technical concept[] with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) [internal quotation marks and citations omitted]. Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 [internal quotation marks and citation omitted]. "Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Id*. [citations omitted]. "More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 334-35 [citation omitted].

With regard to the first factor (i.e., the private interest that was affected by the official action), I have carefully reviewed the personal information contained in the two documents in question, and I find that Plaintiff had only a minimal interest in not having that personal information disclosed in the limited manner in which it was done so. As explained above in Part III.A. of this Report-Recommendation, the personal information is contained in only a *few lines* of Plaintiff's four-page homework assignment of June 10, 2007, and *not at all* in Plaintiff's two-

page letter of August 26, 2004.[82]  Moreover, the focus of Defendants' disclosure of that

information was not on the personal nature of the information but on the handwriting in which all

of the information in the documents was conveyed.[83]  Furthermore, Plaintiff was given notice of

the disclosure at, or before, his disciplinary hearing, and was permitted to raise his arguments that

the disclosure of the information had been improper because the information was private or

confidential.[84]  In addition, after the hearing, the copies made of the documents in question were

destroyed.[85]  Finally, although the Court has no duty to independently scour the record for

evidence creating a factual dispute on this issue, I have reviewed most (if not all) of the

voluminous record and I have found no clear evidence establishing that, as a result of

Defendants' actions, the information in question was disclosed to more than three individuals at

Auburn C.F. (other than to Defendant Kozak, who presumably saw the information, as part of her

------------------------------------------

[82]        (*See* Dkt. No. 82, Part 7 [Ex. 2 to Affid. of Cox, provided for *in camera* review only].)

[83]        (*See*, *e.g.*, Dkt. No. 89, Ex. B to Plf.'s Affid, at 101 [Hearing Transcript, in which Defendant Cox testified, "I didn't really care about whatever he was writing about[.]  I was simply matching up words and letters and the way they were written, and the context that they were written [in] . . . the slant of his handwriting[.]  I at no time cared what he supposedly had written.  I just wanted to know where they were similar."]; *see also*, *supra*, note 60 of this Report-Recommendation [citing cases differentiating between the confidential communications contained in a document and the type or handwriting in which those communications are written].)

[84]        (*See*, *e.g.*, Dkt. No. 82, Part 7, Ex. 4 [Cox Affid., attaching Inmate Misbehavior Report of 9/16/04, describing grounds for charges]; Dkt. No. 89, Ex. B to Plf.'s Affid, at 29, 44, 45, 75 [Hearing Transcript, evidencing that Plaintiff was given a copy of the documents in question at the start of the hearing, and that he raised his arguments that the information contained in the documents was private and confidential].)

[85]        (Dkt. No. 82, Part 2, ¶ 6 & Ex. 3 [Affid. of Cox, attaching chain-of-evidence record, showing that the copies of the documents were placed in the evidence locker on 9/16/04, removed from the locker on 9/29/04, for Plaintiff's hearing, and "destroyed" thereafter].)

44

review of Plaintiff's course work): (1) Defendant Cox; (2) the hearing officer, Defendant McAnany; and (3) Defendant Kozak's supervisor, Brian O'Donnell.[86]

With regard to the second factor (i.e., the probable value, if any, of additional procedural safeguards), the value of giving Plaintiff the ability to challenge the disclosure of the documents in question, prior to the disclosure, would have been modest: the confidential nature of the information contained in the documents was minimal, at best, and Defendants possessed a legitimate reason to view that information, for the reasons stated above in Part III.A. of this Report-Recommendation.  In short, they would have obtained the information anyway.

With regard to the third factor (i.e., the burden to the Government that would be imposed by any additional procedural requirement), the record is clear that (1) Defendant Kozak had received a threatening letter, (2) Plaintiff was suspected of sending that letter, and (3) Defendant Kozak was, at least occasionally, exposed to Plaintiff, on a physical level, during group counseling sessions in the S.O.P.  To require Defendant Cox to confront Plaintiff with his suspicion of wrongdoing before Defendant Cox was permitted to view the documents in question would have, if Plaintiff had in fact been the author of the threatening letter, probably placed Defendant Kozak in further peril.  The burden placed on the Government, then, would have been significant.  Based on the current record, I find that no rational fact-finder could find that Plaintiff was not afforded all of the procedural protections to which he was due.

For all these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment due process claims.

---

[86]        See, supra, note 12 of this Report-Recommendation.

#### D.      Fourteenth Amendment Equal Protection Claim

Plaintiff's Fourteenth Amendment Equal Protection claim is so without merit that it

borders on the frivolous.  Plaintiff asserts this claim in one paragraph of his Complaint.  (Dkt.

No. 1, ¶ 117 [Plf.'s Compl.].)  Specifically, in that paragraph, Plaintiff alleges as follows:

> The actions of [the ten defendants in this action] demonstrated
> discrimination towards plaintiff because of his sex offender status.
> The alleged threat incident never occurred as . . . can be . . .
> demonstrated by the plaintiff's disciplinary appeal decision.  The
> plaintiff was treated like an animal with no rights, and still is [being so
> treated], . . . because he is in the class of sex offenders.  His privacy
> rights were maliciously violated and continue to be [violated] without
> penological justification and was used as a scapegoat because of his
> sex offender status.  These actions denied the plaintiff the equal
> protection of the laws within the meaning of the Equal Protection
> Clause and violated the 14th Amendment.

(*Id.*)

Based on these allegations, and the record evidence, I recommend dismissal of this claim

largely for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 82, Part 4, at

23-25 [Defs.' Mem. of Law].)  To prove a violation of the Equal Protection Clause, a plaintiff

must demonstrate that he was intentionally treated differently from others similarly situated as a

result of intentional or purposeful discrimination directed at an identifiable or suspect class.

*Travis v. N.Y. State Div. of Parole*, 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *11

(N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted*, 96-CV-0759, Decision and Order (N.D.N.Y.

filed Nov. 2, 1998) (McAvoy, C.J.).  Where the alleged classification involves a "suspect class"

or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court.

*Travis*, 1998 U.S. Dist. LEXIS 23417, at *11.  However, "[s]ex offenders do not comprise a

suspect or quasi-suspect class for Equal Protection purposes." *Id*. at *12-13 [citations omitted].[87]
As a result, the alleged classification is subject to only "rational basis scrutiny." *Id*. at *11-12.
To survive such scrutiny, the alleged classification need only be "rationally related" to a
"legitimate state interest." *Id*.

Here, Plaintiff has not even alleged facts plausibly suggesting there has been any
*classification* at all in this case, i.e., that he was treated differently from prisoners who were not
convicted sex offenders.  Even if he had alleged such facts, he has adduced no evidence that the
alleged discrimination he experienced was not rationally related to a legitimate state interest.
The "disciplinary appeal decision," which is referred to in Plaintiff's Complaint, states that
Plaintiff's hearing determination had been modified because the "letter that was allegedly written
by inmate was not given to employee."[88]  Plaintiff *appears* to interpret this statement as meaning
that Defendant Kozak never received any threatening letter on or about May 24, 2004.  I do not
interpret that statement in such a manner.  Clearly, that statement is referring to either (1) the fact
that the letter of May 24, 2004, was not given to Defendant Kozak for authentication during the
disciplinary hearing, or (2) the fact that Plaintiff ripped up his letter of September 16, 2004, after
Defendant Kozak refused to accept it.

---

[87]     *See also Selah v. Goord*, 04-CV-3273, 2006 U.S. Dist. LEXIS 51051, at *21
(S.D.N.Y. July 24, 2006) ("Neither sex offenders nor the mentally ill are a suspect class
warranting heightened [or strict] equal protection scrutiny.") [citations omitted].

[88]     (Dkt. No. 82, Part 6, at Ex. C, at 2 [DOCS Memorandum of 11/30/04, from
Selsky, stating that Plaintiff's hearing determination had been modified because "letter that was
allegedly written by inmate was not given to employee," referring to either (1) the letter of
5/24/04, which was not given to Defendant Kozak for authentication during the disciplinary
hearing, or (2) Plaintiff's letter of 9/16/04, which Plaintiff ripped up after Defendant Kozak
refused to accept it].)

Even if Plaintiff's interpretation of the statement were correct, the statement would not constitute evidence from which a rational fact-finder could conclude that there was no rational relation between Defendants' conduct and a legitimate state interest.  For the reasons stated above in Part III.A. of this Report-Recommendation, Defendant Cox clearly possessed a legitimate reason to view that information, namely, to conduct a handwriting comparison in order to protect the safety of a female employee of a maximum security correctional facility who apparently had been threatened by a male prisoner.  As also explained above, record evidence exists suggesting that the reason Defendant Cox chose to take writing samples from Plaintiff's S.O.P. file is because (1) Defendant Cox believed those samples would give him a "good look" at Plaintiff's handwriting since Plaintiff had been "comfortable" when he wrote on those samples, and (2) Defendant Kozak had suggested that Defendant Cox look at those samples after she had reviewed those samples due to Plaintiff's inappropriate behavior toward her.  *See*, *supra*, Part III.A. of this Report-Recommendation.

I reach the same conclusion (i.e., that Plaintiff's claim lacks merit) for the alternative reason that Plaintiff has failed to oppose Defendants' legal argument regarding Plaintiff's equal protection claim.  Under Local Rule 7.1(b)(3), "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown."  N.D.N.Y. L.R. 7.1(b)(3).  Among the "papers" required to be filed

and served by Plaintiff in response to the Defendants' motion is a memorandum of law.[89]

Because Plaintiff has failed to file a memorandum of law opposing Defendants' argument,

Plaintiff has "consented" to that argument under Local Rule 7.1(b)(3) of the Local Rules of

Practice for this Court.[90]  Because Plaintiff has "consented" to the Defendants' argument, the

only remaining issue is whether Defendants have met their burden "to demonstrate entitlement to

the relief requested" through that argument.  This burden has appropriately been characterized as

"modest."[91]  This is because, as a practical matter, the burden requires only that the Defendants

---

[89]     N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response . . .* must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

[90]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

[91]     *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)]; *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *cf. Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to

present an argument that is "facially meritorious."[92]  Here, I find that Defendants' equal

protection argument is, at the very least, facially meritorious, for the reasons set forth above.

For all these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth

Amendment equal protection claim.

### E.    Conspiracy Claims

Plaintiff asserts his conspiracy claims in two paragraphs of his Complaint.  (Dkt. No. 1,

¶¶ 115-16 [Plf.'s Compl.].)  For the same reasons that I find there is no record evidence of any

underlying constitutional violation in this case (*see*, *supra*, Parts III.A. to III.D. of this Report-

Recommendation), I find there is no record evidence of any conspiracy to engage in such a

violation.  Moreover, I reach the same conclusion (i.e., that Plaintiff's conspiracy claims lack

merit) for the alternative reason that (1) Defendants' legal argument in favor of dismissal of

Plaintiff's conspiracy claims is, at the very least, "facially meritorious,"[93] and (2) by failing to

---

dismiss *and the reasons set forth in defendants' motion papers*)*, adopted by* 1997 U.S. Dist.
LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent
Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd,
M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[92]     *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8
(N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under
Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially
meritorious*") [emphasis added; citations omitted]; *accord*, *Topliff v. Wal-Mart Stores East LP*,
04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe,
M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2
(N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS
26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist.
LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S.
Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S.
Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[93]     (Dkt. No. 82, Part 4, at 22-23 [Defs.' Mem. of Law].)

oppose that legal argument in his opposition memorandum of law, Plaintiff is deemed to have

"consented" to that argument under Local Rule 7.1(b)(3) of the Local Rules of Practice for this

Court.  *See*, *supra*, Part III.D. of this Report-Recommendation (reciting legal standard governing

unopposed motions).

 For these reasons, I recommend that the Court dismiss Plaintiff's conspiracy claims.

### F.     Pendent State Law Claims

 Plaintiff asserts his conspiracy claims in a dozen paragraphs of his Complaint, which

allege that Defendants committed the following violations of New York State law: (1) the state

law tort of "invasion of common law right to privacy"; (2) a violation of N.Y. Civil Rights Law §

50-(b)(1); (3) a breach of fiduciary duty; (4) a violation of N.Y. C.P.L.R. § 4510(b); (5) the state

law tort of intentional infliction of emotional distress; (6) the state law tort of medical

malpractice; and (7) a violation of Penal Law § 240.25.  (Dkt. No. 1, ¶¶ 96, 98-101, 109-113

[Plf.'s Compl.].)  I find that Defendants' legal argument in favor of dismissal of these claims is,

at the very least, "facially meritorious."  (Dkt. No. 82, Part 4, at 27-30 [Defs.' Mem. of Law].)  I

also find that, by failing to oppose that legal argument in his opposition memorandum of law,

Plaintiff is deemed to have "consented" to that argument under Local Rule 7.1(b)(3) of the Local

Rules of Practice for this Court.  *See*, *supra*, Part III.D. of this Report-Recommendation (reciting

legal standard governing unopposed motions).

 For these reasons, I recommend that the Court dismiss Plaintiff's pendent state law

claims.

### G.  Alternative Grounds for Dismissal

In the alternative, Defendants assert three additional arguments in favor of dismissal of Plaintiff's claims: (1) that Plaintiff's claims against Defendants in their official capacities should be dismissed under the Eleventh Amendment; (2) that Plaintiff's claims against the eight Defendants who are supervisors (i.e., Defendants O'Donnell, McAnany, Goord, Granger, McSweeney, Nuttall, Burge, and Nelson) should be dismissed because there is no record evidence that they were personally involved in the constitutional violations alleged; and (3) that all of Plaintiff's claims should be dismissed based on qualified immunity.  (Dkt. No. 82, Part 4, at 7, 13-19, 25-27 [Defs.' Mem. of Law].)

I find that Defendants' first argument (i.e., regarding Plaintiff's official-capacity claims) has, at the very least, facial merit.  Moreover, in his opposition memorandum of law, Plaintiff fails to oppose this argument.  As a result, I find that he has "consented" to the dismissal of his official-capacity claims.

With regard to Defendants' second and third arguments, I have carefully reviewed Defendants' memorandum of law, Plaintiff's opposition memorandum of law, and the record evidence.  For the sake of brevity, I will not engage in a detailed discussion of these arguments and the record evidence in this case.  I will simply report my finding that Defendants' arguments have merit, and Plaintiff's arguments lack merit, based on the record evidence.

For these reasons, should the Court decide not to adopt the recommendations set forth in Parts III.A. to III.F. of this Report-Recommendation, I recommend that the Court dismiss Plaintiff's claims for the three alternative reasons advanced by Defendants (i.e., Eleventh Amendment immunity, lack of personal involvement, and qualified immunity).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 82) be

**GRANTED** and that Plaintiff's Complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 3, 2007
       Syracuse, New York

George H. Lowe
United States Magistrate Judge